IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

DIGITALDOORS, INC.,

Plaintiff,

v.

PEAPACK PRIVATE BANK & TRUST,

Defendant.

Civil No. 25-2349 (RMB-AMD)

**MEMORANDUM OPINION &
ORDER**

**THIS MATTER** comes before the Court following a Pre-Motion Conference with the parties pursuant to this Court's Individual Rules and Practices. Plaintiff DigitalDoors is a developer of data-security and data-recovery solutions. [Docket No. 1 ("Compl.") ¶¶ 2–3.] It holds four patents which "each relate generally to unconventional methods and systems for organizing and processing data in a distributed system and, more particularly, those which extract specific sensitive content for specialized storage and subsequent reconstruction." [*Id.* ¶ 27.]

DigitalDoors has sued Defendant Peapack Private Bank & Trust for infringing on these patents. The allegations against Peapack are identical to those brought by DigitalDoors against fifty-nine other financial services institutions across the country.[1] The complaints are near-

---

[1] *DigitalDoors, Inc. v. Bank of Ann Arbor*, No. 25-11030 (E.D. Mich.); *DigitalDoors, Inc. v. Byline Bank*, No. 25-3843 (N.D. Ill.); *DigitalDoors, Inc. v. Metro. Com. Bank*, No. 25-2891 (S.D.N.Y.); *DigitalDoors, Inc. v. Flushing Bank*, No. 25-1895 (E.D.N.Y.); *DigitalDoors, Inc. v. First W. Tr. Bank*, No. 25-1206 (D. Colo.); *DigitalDoors, Inc. v. Gulf Coast Bank and Tr. Co.*, No. 25-748 (E.D. La.); *Digitaldoors, Inc. v. SouthPoint Bank*, No. 25-595 (N.D. Ala.); *DigitalDoors, Inc. v. W. All. Bank, d/b/a Alliance Bank*, No. 25-111 (W.D. Tex.); *DigitalDoors, Inc. v. WestStar Bank*, No. 25-110 (W.D. Tex.); *DigitalDoors, Inc. v. Vantage Bank Texas*, No. 25-109 (W.D. Tex.); *DigitalDoors, Inc. v. Texas Cap. Bank*, No. 25-108 (W.D. Tex.); *DigitalDoors, Inc. v. Pinnacle Bank*, No. 25-107 (W.D. Tex.); *DigitalDoors, Inc. v. The N. Tr. Co.*, No. 25-106 (W.D. Tex.); *DigitalDoors, Inc. v. Int'l*

carbon copies of one another. DigitalDoors alleges that every financial services company that complies with "Sheltered Harbor" data-security standards has necessarily violated its patents. Sheltered Harbor is a non-profit, industry-led initiative established to safeguard customer bank account data in the event of a cyberattack or other major IT disruption. It publishes technical specifications and operational standards for data protection and certifies financial institutions that implement those standards. [*Id.* ¶¶ 63–66.] Although DigitalDoors alleges that "there is near uniform participation in the Sheltered Harbor standard across the financial services industry,"

---

*Bancshares Corp., d/b/a IBC Bank*, No. 25-105 (W.D. Tex.); *DigitalDoors, Inc. v. City Bank*, No. 25-104 (W.D. Tex.); *DigitalDoors, Inc. v. Broadway Bancshares, Inc.*, No. 25-103 (W.D. Tex.); *DigitalDoors, Inc. v. Amarillo National Bank*, No. 25-102 (W.D. Tex.); *DigitalDoors, Inc. v. United Cmty. Bank, Inc.*, No. 24-5588 (N.D. Ga.); *DigitalDoors, Inc. v. Synovus Bank*, No. 24-5587 (N.D. Ga.); *DigitalDoors, Inc. v. SouthState Bank, N.A.*, No. 24-5585 (N.D. Ga.); *DigitalDoors, Inc. v. Servisfirst Bancshares, Inc.*, No. 24-5583 (N.D. Ga.); *DigitalDoors, Inc. v. Renasant Bank, Inc.*, No. 24-5582 (N.D. Ga.); *DigitalDoors, Inc. v. RBC Bank (Georgia)*, No. 24-5580 (N.D. Ga.); *DigitalDoors, Inc. v. FirstBank Corp.*, No. 24-5579 (N.D. Ga.); *DigitalDoors, Inc. v. Colony Bank*, No. 24-5578 (N.D. Ga.); *DigitalDoors, Inc. v. Ameris Bank*, No. 24-5576 (N.D. Ga.); *DigitalDoors, Inc. v. Am. Express Co.*, No. 24-5574 (N.D. Ga.); *DigitalDoors, Inc. v. Washington Fed. Bank*, No. 24-787 (E.D. Tex.); *DigitalDoors, Inc. v. Vertex Holdings, Inc.*, No. 24-786 (E.D. Tex.); *DigitalDoors, Inc. v. TruMark Fin. Credit Union*, No. 24-785 (E.D. Tex.); *DigitalDoors, Inc. v. Stifel Bank*, No. 24-784 (E.D. Tex.); *DigitalDoors, Inc. v. Indep. Bank Gr., Inc.*, No. 24-783 (E.D. Tex.); *DigitalDoors, Inc. v. First United Bank & Tr. Co.*, No. 24-782 (E.D. Tex.); *DigitalDoors, Inc. v. First Found. Bank*, No. 24-781 (E.D. Tex.); *DigitalDoors, Inc. v. First Fin. Bank*, No. 24-780 (E.D. Tex.); *DigitalDoors, Inc. v. Centennial Bank*, No. 24-779 (E.D. Tex.); *DigitalDoors, Inc. v. PlainsCapital Bank*, No. 24-778 (E.D. Tex.); *DigitalDoors, Inc. v. UMB Bank, N.A.*, No. 24-320 (E.D. Tex.); *DigitalDoors, Inc. v. Simmons Bank*, No. 24-319 (E.D. Tex.); *DigitalDoors, Inc. v. PNC Bank, N.A.*, No. 24-317 (E.D. Tex.); *DigitalDoors, Inc. v. Origin Bank*, No. 24-316 (E.D. Tex.); *DigitalDoors, Inc. v. Frost Bank*, No. 24-315 (E.D. Tex.); *DigitalDoors, Inc. v. First Nat'l Bank of Omaha*, No. 24-314 (E.D. Tex.); *DigitalDoors, Inc. v. First Horizon Bank*, No. 24-313 (E.D. Tex.); *DigitalDoors, Inc. v Cathay Bank*, No. 24-312 (E.D. Tex.); *DigitalDoors, Inc. v. Cadence Bank*, No. 24-311 (E.D. Tex.); *DigitalDoors, Inc. v. Wells Fargo Bank, N.A.*, No. 24-310 (E.D. Tex.); *DigitalDoors, Inc. v. Regions Bank*, No. 23-552 (E.D. Tex.); *DigitalDoors, Inc. v. Prosperity Bank*, No. 23-551 (E.D. Tex.); *DigitalDoors, Inc. v. JP Morgan Chase & Co.*, No. 23-550 (E.D. Tex.); *DigitalDoors, Inc. v. First Citizens Bank & Tr. Co.*, No. 23-548 (E.D. Tex.); *DigitalDoors, Inc. v. E. W. Bank*, No. 23-547 (E.D. Tex.); *DigitalDoors, Inc. v. Cap. One, N.A.*, No. 23-546 (E.D. Tex.); *DigitalDoors, Inc. v. BOKF, N.A.*, No. 23-545 (E.D. Tex.); *DigitalDoors, Inc. v. Beal Bank*, No. 23-544 (E.D. Tex.); *DigitalDoors, Inc. v. Bank OZK*, No. 23-543 (E.D. Tex.); *DigitalDoors, Inc. v. Bank of Am., N.A.*, No. 23-542 (E.D. Tex.); *DigitalDoors, Inc. v. Comerica Bank*, No.  No. 23-541 (E.D. Tex.); [1] *DigitalDoors, Inc. v. Int'l Business Machs. Corp.*, No. 22-457 (E.D. Tex.).

as alleged, only about 70% of all deposit accounts and all retail brokerage client assets are actually protected in accordance with the data-security standards developed by Sheltered Harbor. [*Id.* ¶ 66.] DigitalDoors alleges, "[u]pon information and belief," that each of the sixty financial institutions it has sued (including Peapack) is "compliant with the Sheltered Harbor specification[,]" and, thus, has infringed its patents. [*Id.* ¶ 96.]

Although some of these complaints have withstood motions to dismiss, *see, e.g.*, *DigitalDoors, Inc. v. Comerica Bank*, 2024 WL 4329026 (E.D. Tex. Sept. 9, 2024), *report and recommendation adopted*, 2024 WL 4341547 (E.D. Tex. Sept. 27, 2024); *DigitalDoors, Inc. v. Cathay Bank*, 2025 WL 957212, at *1 (E.D. Tex. Mar. 6, 2025), *report and recommendation adopted*, 2025 WL 950073 (E.D. Tex. Mar. 28, 2025), this Court expressed its skepticism at Plaintiff's theory of infringement at the Pre-Motion Conference. Before a party files a lawsuit, it must conduct "a reasonable inquiry into the facts alleged in its pleadings" "[i]n order to satisfy its obligations under Rule 11[.]" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015).

DigitalDoors alleges that it needs discovery to ascertain whether Peapack is a Sheltered Harbor-certified institution. [Compl. ¶ 96.] That is not good enough. DigitalDoors cannot, consistent with its Rule 11 obligations, indiscriminately file lawsuits against any financial services company it pleases in the hopes that the bank it has named as the defendant protects its customer accounts under Sheltered Harbor standards.

Of course, a plaintiff can make allegations based on information and belief. But the only basis for DigitalDoors's information or belief that Peapack is a Sheltered Harbor-compliant bank appears to be that roughly 70% of customer accounts across the financial services industry are protected under Sheltered Harbor standards. [*Id.* ¶ 66.] That kind of infringement-by-assumption logic—that Peapack must be a Sheltered Harbor-compliant bank because most banks protect customer assets under Sheltered Harbor standards—is flawed. And it does not satisfy Rule 11's

reasonable inquiry requirement. It's like saying that a manufacturer of vehicle gas tanks can sue every car manufacturer for infringing on its gas tank design because most cars run on gas. Unlocking the doors to discovery on nothing more than DigitalDoors's information and belief assumptions based on industry statistics would impermissibly expose Peapack to a burdensome and costly fishing expedition. *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (courts cannot permit a plaintiff to "conduct a fishing expedition in order to find a cause of action"). "Given what little the complaint tells us [about Peapack's systems], there is nothing reasonable about [Plaintiff's] expectation that taking discovery would reveal any infringement." *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014).

DigitalDoors says that the specific details of Peapack's data archive systems are beyond public view and known only to Peapack. [*Id.* ¶ 96.] Fair enough. But DigitalDoors still has to "make *that* assertion with some supporting, detailed factual allegations" and not simply on "information and belief." *Maimon v. United States*, 175 Fed. Cl. 553, 562 (2025) (emphasis supplied). And that assertion still has to be based on a reasonable investigation from any information that *is* available or discovered pre-suit rather than on citations to statistics regarding the adoption of Sheltered Harbor standards within the financial services industry generally.

So, because DigitalDoors didn't do its pre-filing homework against Peapack, it has to do it now.[2] Accordingly, and consistent with the directives given at the Pre-Motion Conference,

---

[2] The Court also reminds DigitalDoors that, pursuant to Local Civil Rule 40.1(c), any new actions filed in this Judicial District against Sheltered Harbor-compliant companies for patent infringement will be assigned to this Court. *See* L. CIV. R. 40.1(c) ("When a civil action …involves the validity or infringement of any patent … which is involved in a case already or previously pending in this Court, counsel … shall at the time of filing the action inform the Clerk of such fact. Whenever possible, such action shall be assigned to the same Judge to whom the pending or previously related action is or was assigned.").

**IT IS**, on this **5th** day of **June**, **2025**; hereby

1.    **ORDERED** that the parties shall meet and confer to determine whether Peapack employs any software, methods, processes, or systems that are Sheltered Harbor-compliant, or its functional equivalent; and it is finally

2.    **ORDERED** that the parties shall appear for a Conference via Microsoft Teams on July 1, 2025 at 3:00 p.m. to update the Court on the status of their meet-and-confer.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge